BERTHA ZINC & MINERAL CO. v. VAUGHAN.

(Circuit Court, W. D. Virginia. July 27, 1898.)

1. JURISDICTION OF FEDERAL COURTS—DIVERSE CITIZENSHIP—ACTIONS BY. ASSIGNEES.

   A nonresident assignee of a share in the estate of an intestate, who sues the administrators and their sureties to enforce obligations incurred by an alleged failure to properly discharge their duties, is not an assignee of a chose in action, in the meaning of the judiciary act of March 3, 1887, so as to be precluded from maintaining the suit in a federal court by the fact that his assignor could not have maintained it therein.

2. SAME—DECREE OF STATE COURT SETTLING ADMINISTRATOR'S ACCOUNTS.

   A federal court may, in a case of diverse citizenship, entertain a suit to surcharge and correct a settlement of accounts by administrators which has been confirmed by decree of the proper state court.

Blair & Blair, for plaintiff.
Walker & Caldwell, for defendants.

PAUL, District Judge. The plaintiff is a corporation chartered under the laws of the state of New Jersey, and is a citizen of that state. It brings its bill in equity against J. P. Vaughan, administrator of one Michael Black, deceased, and the sureties on his official bond; J. P. Vaughan and T. C. Vaughan, co-administrators of Michael Black, deceased; the sureties on the official bond of said co-administrators; certain persons as distributees of the estate of said Michael Black, deceased; Clark Litterall; and B. F. Garnett. The defendants are all citizens of the state of Virginia. The material allegations of the bill are as follows: In the year 1888 Michael Black was accidentally killed while in the service of the Bertha Zinc Company, dying intestate; leaving, as the distributees of his estate, his children,—among them a daughter, Candice, who had intermarried with one George Nelson. On the 2d day of October, 1888. J. P. Vaughan was appointed administrator of the estate of said Michael Black by the county court of Grayson county, Va., and as such executed bond with sureties. On the 6th day of October, 1892, in the county court of Grayson county, the said J. P. Vaughan and one T. C. Vaughan were appointed co-administrators of the estate of said Michael Black, deceased, executing a bond with sureties in the penalty of $15,000. The bill alleges that in the month of February, 1893, there passed into the hands of the said administrators the sum of $13,003.37, being the proceeds of an execution in the name of J. P. Vaughan, administrator, etc., against the Bertha Zinc Company, which sum was liable to distribution among the heirs and distributees

of the said Michael Black, deceased,—six in number; that said Candice Nelson and George W. Nelson, her husband, by written assignment dated September 28,·1891, duly acknowledged before a justice of the peace, assigned to one Clark Litterall, in consideration of a parcel of land, the sum of $1,000 of said fund, due her as one of the distributees of the estate of her father, Michael Black, deceased; that on the 18th of February, 1892, said Candice Nelson and her husband, George W. Nelson, assigned to said Clark Litterall $100 more of said fund; that on the 29th of July, 1892, the said Candice Nelson, George W. Nelson, her husband, and said Clark Litterall assigned to one B. F. Garnett all of their right, title, and interest in said fund arising from said judgment and execution, the said assignment being in full of principal, interest, and costs of the interest or share of said Candice Nelson; that said Clark Litterall at the same time, for value, assigned to said B. F. Garnett the two former assignments that Candice Nelson and her husband had made to said Litterall; that thus said Garnett on the 29th of July, 1892, became, for value, the owner and assignee of the full interest of said Candice Nelson; that said interest, at the time said execution was paid to said administrators of said Michael Black, deceased, amounted to the sum of $2,167.25.   On the 29th of July, 1892, said B. F. Garnett assigned said full share or interest of Candice Nelson so held by him to the complainant, the Bertha Zinc & Mineral Company.   The written assignments are made exhibits with the bill, and a part thereof.   The complainant further avers that by proper legal assignments, without notice of offsets, it has become the owner of the entire interest of the said Candice Nelson in the judgment and execution due her father's estate which was collected by said administrators.   The bill charges that, though frequent demands have been made, said administrators have not paid any part of the said sum of money due the complainant; that in the month of March, 1893, said administrators made an ex parte settlement of their accounts before the commissioner of accounts of the county court of Grayson county; that this settlement was returned before the county court of Grayson county on the 4th of July, 1893, and at the August term, 1893, of said court the same was confirmed and ordered to be recorded; that by this settlement it was made to appear that the entire fund had been distributed. Copies of the settlement, report, and order of confirmation are made exhibits with the bill.   The bill attacks the settlement made by the administrators on the following grounds:

"(1) Because, although the said administrators of Black had full notice and knowledge of the ownership by the said B. F. Garnett, and of orator's subsequent assignment of the said Candice Nelson's interest, they proceeded to take the said account and make the said settlement before the said Commissioner Porterfield without giving to the said B. F. Garnett, orator's assignor, any notice of any kind thereof. (2) Because the amount charged to them as received from the Bertha Zinc Company on said fi. fa. as of February, 1893, was erroneous, as the principal, interest, and costs at that time, by a calculation, will appear to have amounted to more than the $13,048.99 with which they are charged. The debt amounted to more than that, if properly calculated. (3) The settlement is erroneous in allowing Jas. A. Walker the item of $5,609.40, as it was allowed contrary to law, and in violation of the rights of the said B. F. Garnett. (4) The amount paid to J. P. Vaughan, of

$515, was erroneous, not properly proven, and should not have been paid. (5) That the division of the said distributive shares into sums of $911.10 each was grossly wrong; and the item of February 28, 1893, in said account of Candice Nelson, by, etc., was erroneous and false, in this: that her distributive share amounted to $2,167.25, instead of the paltry sum paid her of $900 on February 28, 1893, and $11.10 on March 7, 1893, as in full of her share, are false, as neither she nor said Garnett nor orator ever received one cent thereof. (6) Orator denies that either Candice Nelson, B. F. Garnett, or your orator has ever received one cent of the said fund on the distributive share of the said fund, and, if any one has ever so receipted and settled upon the said basis, it was unwarranted and wholly unauthorized, and in violation of the rights of the said Garnett and of your orator; and orator here denies and impeaches the said receipts, as unwarranted and unauthorized, and it demands of the said administrator the said sum of $2,167.25, with interest from the time that the said fund should have been paid to the said B. F. Garnett. (7) Your orator further avers that the charge of $5,609.40, which purports to have been paid by the said administrators to their attorney, was wholly unauthorized, and without the knowledge or consent of orator or said Garnett, and was so excessive, and in violation of the rights of said Garnett, who then owned the share of the said Candice Nelson. All that could have been legally allowed said administrators for the payment of their attorney was a reasonable sum; and orator avers that neither it nor the said B. F. Garnett ever had any notice or knowledge of any attorney's fees being allowed by the said administrators until a short time ago, and at the time of the assignment to said Garnett, on the 29th day of July, 1892, he had no notice or knowledge of any part of the said claim having been assigned, as he had the judgment lien docket of Wythe county examined, and also the clerk's office of the circuit court of Wythe county, wherein the judgment and execution were; and he has no knowledge of any attorney's fees claimed against the said fund, and orator had no knowledge or notice of any such claim when he took the same from Garnett by assignment. (8) But orator avers that not one cent of the said residue of $911.10 due Candice Nelson after the payment of the said exorbitant fees has ever been paid either to her, the said Litterall, the said Garnett, or to orator, and that orator is advised that the said payment was unwarranted and wholly unauthorized. (9) For the foregoing reasons, orator impeaches, surcharges, and falsifies the said pretended and illegal settlement by said administrators, and demands the payment to it from them of the full amount of $2,167.25, with interest from the 27th day of February, 1893, until paid. (10) Your orator therefore assails the said account as incorrect in whole, because taken without any notice to either it or said Garnett, although the administrators knew of the said assignment of said Candice Nelson's interest. They also surcharge and falsify it because they have not charged themselves with the full amount of the principal, interest, and costs received. They surcharge and falsify it because, instead of distributing the said sum of $13,048.99, which they admit they received on the said fund, into six equal shares, they improperly and unjustly, and in violation of the rights of said Garnett and of your orator, paid over nearly one-half of the entire sum, to wit, $5,609.40, to their attorney, J. A. Walker, without the consent or knowledge of orator or said Garnett, but which would have been resisted if such a transaction had been known to either of them. They also surcharge and falsify the allowance of 10% commissions on said $13,048.99, which was $1,304.89, because the administrators should not have been allowed 10% upon the gross amount received and collected by them, and orator says that such commissions were excessive, and that 5% commissions would have been ample and reasonable; and, as already stated, it denies all payments by them of any part of the said Candice Nelson's share to any one authorized to receive it, and asks the court to hold them responsible for improperly paying over Candice Nelson's share to any one except Garnett or said orator. Orator avers that both it and the said Garnett are surprised by the development of the fact that this ex parte settlement was made by the administrators at all, and especially that it was made in the manner heretofore indicated; and it here and now puts its finger upon the matters of wrong contained in said report of settlement, and the unfair advantage taken of them by the said

administrators, and asks the court to correct the said account, and to decree to your orator, the present valid owner, the full amount of the said Candice Nelson's share aforesaid. Orator demands that the said administrators produce before this court any vouchers for the interest of the said Candice Nelson, and, if produced, they are controverted and denied herein by your orator. (11) Orator avers that it supposed there would be no trouble about the receipt of this money, and that as soon as it was collected, and some small debts against Michael Black that were claimed were paid, that orator would receive its money; and it only learned a few months ago, to its great surprise, that said administrators had made any settlement before a commissioner."

The defendants demur to the bill, and state the following grounds of demurrer:

"First. Because the said bill shows on its face that the complainant is the assignee of the defendant B. F. Garnett, and that said B. F. Garnett is the assignee of his co-defendant Clark Litterall, who is the assignee of Candice Nelson, and that said Candice Nelson, Clark Litterall, and B. F. Garnett, being citizens of Virginia, could not have prosecuted suit upon said claim in this court, and therefore their assignee cannot do so. Second. And for a second ground of demurrer the defendants say that this court has no jurisdiction, because on the face of the bill it appears that the complainant seeks to review, reverse, and set aside a decree and order of the county court of Grayson county confirming the report of the commissioner of accounts for said county in pursuance of law, and in the exercise of powers and jurisdiction conferred upon said officer and said court of law. Third. And for a third ground of demurrer the said defendants say that this court has no jurisdiction over the settlement of a fiduciary account made by an administrator regularly appointed by a state court, and acting in pursuance to law, and that such settlements, when made before the proper officers, returned to, approved, confirmed, and recorded by the proper court, are judgments and decrees of a legally constituted tribunal having jurisdiction over the subject-matter and over the parties, and such settlement and such decrees and orders can only be impeached and corrected, surcharged and falsified, before the court rendering such orders and decrees."

The first ground of demurrer is based on the following provision of the act of March 3, 1887 (24 Stat. 552, 553, c. 373, § 1):

"Nor shall any circuit or district court have cognizance of any suit except upon foreign bills of exchange, to recover the contents of any promissory note or other chose in action in favor of any assignee, or of any subsequent holder if such instrument be payable to bearer and be not made by any corporation, unless such suit might have been prosecuted in such court to recover the said contents if no assignment or transfer had been made."

It is insisted for the defendants that the interest of Candice Nelson, one of the distributees of the estate of Michael Black, was an interest in a judgment against the Bertha Zinc Company; that this judgment was a chose in action; that the assignor thereof could not have prosecuted a suit in this court for the recovery of the contents of the same if no assignment or transfer had been made. This act was construed in Ambler v. Eppinger, 137 U. S. 480, 11 Sup. Ct. 173. That was an action of trespass, brought by an assignee of the claim, to recover damages for cutting down and removing timber from the land of the assignor. The supreme court in that case said:

"This act, as appears on its face, does not embrace within its exceptions to the jurisdiction of those courts suits by an assignee upon claims like the demand in controversy. The exceptions, aside from suits on foreign bills of exchange, are limited to suits on promissory notes and other choses in action, where the demand sought to be enforced is represented by an instrument in writing, payable to the bearer, and not made by a corporation; the words

following the designation of choses in action indicating the manner in which they are to be shown. They must be such as arise upon contracts of the original parties, and not founded, like the one in controversy, upon a trespass to property."

The suit at bar is not one that arises upon contract of the original parties. The plaintiff here has never had a contract of any kind with the defendants the administrators of Michael Black. Nor is it seeking to enforce the collection of the judgment recovered in an action of trespass brought by the administrators of Michael Black against the Bertha Zinc Company. An execution issued on that judgment was collected, and went into the hands of the defendants the administrators of Black. It is to recover the amount due the plaintiff from the proceeds of this execution. It is to surcharge and falsify the settlement of the administrators, on the grounds that the settlement by the administrators made before the commissioner of accounts of Grayson county was made without notice; that the amount charged to the administrators was erroneous; that the amount allowed in the settlement to the attorney for the plaintiff in the judgment recovered by him against the Bertha Zinc Company was contrary to law; that the amount of commissions to J. P. Vaughan, one of the administrators, was erroneous; that the division of the distributees' shares into sums of $911.10 each was grossly wrong; that the distributive share of Candice Nelson, now due the complainant, should have been $2,167.25, instead of $911.10; that the administrators have never paid to the complainant, or to any one authorized to receive the same, any part of said Candice Nelson's share assigned to the complainant. It denies all payments of any part of said share, though credit was given to the administrators for such payments by the commissioner of accounts, and controverts and denies any vouchers they may have for the payment of said interest or any part thereof. The suit is, in effect, one against the administrators and their sureties on their official bond, for a devastavit. It is not founded on a contract, nor brought to enforce a contract, but to enforce obligations incurred by administrators of an estate in their official capacity, by a failure to properly discharge their fiduciary duties. A nonresident assignee, bringing a suit of this character, is entitled to have the same heard in this court.

The second and third grounds of demurrer are practically the same, and will be considered together. They, in substance, deny that this court has jurisdiction to review or set aside a decree confirming a settlement of a fiduciary account made before a commissioner of accounts of a state court; that such settlement, when made before the proper officer and confirmed, is a judgment of a tribunal having jurisdiction over the subject-matter and the parties, and can only be impeached, surcharged, and falsified before the court entering such orders. This contention cannot be maintained. Van Bokkelen v. Cook was a case in which a bill in equity was filed in the circuit court of the United States against an administrator to recover assets which he had fraudulently withheld, and it was held that a final settlement of an administrator's accounts by a probate court was no bar to the suit; the court saying:

"The question thus raised is whether this court has jurisdiction to call an administrator to account, who has, in the course of his trust, defrauded the estate, notwithstanding the probate court which appointed him may have passed a decree finally settling his accounts and discharging him. That the court has this jurisdiction, we think, can be satisfactorily shown. The frauds charged in this bill are not shown to have been investigated or passed upon by the probate court, but to have been concealed from that court; and it would indeed be against conscience, and a subversion of justice, if an administrator, while confessing a fraudulent management of the assets of the estate under his care, could successfully plead in bar of a suit like this, by the defrauded heirs, the final settlement of his accounts by the probate court." 28 Fed. Cas. 949.

The question here raised was presented to the supreme court, and decided, in Payne v. Hook, 7 Wall. 425. In that case the court says:

"If this position could be maintained, an important part of the jurisdiction conferred on the federal courts by the constitution and laws of congress would be abrogated. As a citizen of one state has the constitutional right to sue a citizen of another state in the courts of the United States, instead of resorting to a state tribunal, of what value would that right be if the court in which the suit is instituted could not proceed to judgment, and afford a suitable measure of redress? The right would be worth nothing to the party entitled to its enjoyment, as it could not produce any beneficial results. But this objection to the jurisdiction of the federal tribunals has been heretofore presented to this court and overruled."

It is unnecessary to cite further authorities to sustain the jurisdiction of the court of this suit. The demurrer will be overruled, with leave to the demurrants to answer.