McDERMOTT and others *v.* COPELAND and another.

*(Circuit Court, E. D. Michigan.   December 12, 1881.)*

1. EQUITY—DECEDENT'S ESTATE—BILL BY A DISTRIBUTEE.

    A bill in equity will not lie in a circuit court by a distributee, against the executors of an estate, to compel them to collect and pay over to complainants their distributive shares of the estate, where no fraud is charged, and it appears the estate has been closed in the probate court, the executors discharged, and an order entered for the distribution of the estate, which consisted of property then in the hands of a surving partner of the decedent.

2. EXECUTORS—DUTIES OF, UNDER THE LAWS OF MICHIGAN.

    By the laws of Michigan an executor is not bound to take possession of the estate any further than is necessary to pay the debts, funeral charges, expenses of administration, specific legacies, etc., and the probate court may then set off the residue to the persons entitled thereto, who may bring suit to recover it directly against the parties in possession.

In Equity.

This was a bill in equity by distributees against executors to compel an accounting and allotment to the complainants of their respective shares in the estate of Frank Nevin, late deceased. The bill set forth in substance that Nevin died in 1878, and by his will, which was admitted to probate, defendants were appointed his executors; that decedent was a partner of one Mills in the tobacco business, and a large portion of his estate was invested in the property of the firm, which was sold to Mills; that of the purchase price,

$118,749.50 was paid over to the executors; but that $39,237.66 was never paid over to them, and they have never accounted for the same. The bill further alleged that defendants filed their final account, and on the seventeenth day of December were discharged by the probate court, and an order was entered that the distributees entitled to said last-mentioned amount should look to Mr. Mills for it; that in carrying out their trust the executors have proved unfaithful in failing to collect this amount, and also in paying themselves $5,000 compensation, in addition to the legacies given them. Certain other charges were made against the defendants, which were abandoned at the hearing. The answer denied that the interest of Nevin in the partnership was sold to said Mills, but averred that the interest of the estate in the merchandise, fixtures, and machinery was sold for $27,897.21, all of which was accounted for; that the executors filed their final account, and petitioned for discharge, and were discharged on the seventeenth day of December, 1878. The answer further denied the entry of an order that the heirs should look to Mills for their respective shares of the $39,000, and averred that an order was entered for the distribution of the remainder of the estate, which consisted of property belonging to the partnership, all of which property was in the possession of and under the control of Mills, as surviving partner, and consisted mainly of claims owing for merchandise. It admitted the charge of $5,000 for services, and averred the same was allowed for defending the will of said Nevin, (a long contest,) and insisted the allowance was proper, and was approved by the probate court.

*Alfred Russell*, for complainants.

*G. V. N. Lothrop*, for defendants.

BROWN, D. J. This case was once argued upon a demurrer to the bill, which was overruled *pro forma*, in order that the point at issue might be more fully presented upon bill and answer. The question involved, is, in substance, whether executors, who have filed their final account in the probate court and have received their discharge, without fraud or collusion, can be compelled, notwithstanding this decree, to account to the next of kin for personal property which they never have reduced to their possession, and which was set off by the probate court directly to the complainants. Beyond all controversy, the judgment or decree of a state court, rendered in a case of which it had complete jurisdiction, cannot be revised or set aside by a collateral proceeding here. *Nougue v. Clapp*, 101 U. S. 551. And this is the case, even if the decree be fraudulent, unless there be also collusion, or some act of the parties tantamount thereto; as, for instance, if a decree be obtained *ex parte* by fraudulent representations. *The Acorn*, 2 Abb. (U. S.) 434; *Michaels v. Post*, 21 Wall. 398; *U. S. v. Throckmorton*, 98 U. S. 61.

Whatever may have been the rule regarding ecclesiastical courts

in England, there is no doubt that in this country courts of probate are almost universally courts of record, and their decrees as conclusive in collateral proceedings as those of any other court of record. Gary, Probate Law, § 24; *Tebbets* v. *Tilton*, 24 N. H. 120; *Ostrom* v. *Curtis*, 1 Cush. 461; *Cummings* v. *Cummings*, 123 Mass. 271; *Barker* v. *Barker*, 14 Wis. 131; *Holmes* v. *Cal. & Or. R. Co.* 9 Fed. Rep. 229.

In *Loring* v. *Steineman*, 1 Metc. 204, the principle of *res adjudicata* was applied to a decree of distribution, made upon such notice as is required by law.

Certain cases are cited by the complainants, which, it is insisted, establish an exception to this rule in the case of decrees of probate courts; but, upon a careful examination, we think all of them are consonant with the general proposition above stated.

In *Payne* v. *Hook*, 7 Wall. 425, a bill was sustained by a distributee to obtain her share in the estate of her brother, who died intestate, and whose estate was committed to the charge of a public administrator by an order of a county court. The bill differed from the one under consideration, however, in the important facts that it charged gross misconduct on the part of the administrator; that he had made false settlements with the court of probate; had not filed a true inventory of the property on hand; had used the money of the estate for his private gain; and obtained from the complainant, by fraudulent representations, a receipt in full for her share of the estate on the payment of a less sum than she was entitled to receive. It further appeared from the bill that the defendant had not yet made his final settlement in the probate court. It is stated in the opinion that the fraudulent conduct of the administrator was the groundwork of the bill, and it is evident that the question of a discharge by the probate court did not enter into the consideration of the case.

In *Horn* v. *Lockhart*, 17 Wall. 570, a bill was filed against an executor to compel a settlement and distribution of the proceeds. The defence was that the probate court, in which the settlement of the estate was pending, had, by its decree, allowed the executor to invest the proceeds of the estate in confederate bonds, and the supreme court held that, as this was an act in furtherance and aid of the rebellion, it was illegal and void, and that the probate court could not give it validity. This was the ordinary case of a court acting without jurisdiction.

In *Pratt* v. *Northam*, 5 Mason, 95, it was held by Mr. Justice Story

that the judgment of the court of probate was not conclusive where it had been obtained by fraud; by which he undoubtedly means such fraud as could be taken advantage of in a collateral proceeding.

This is also the gravamen of the bill in the *Union Bank of Tennessee* v. *Jolly's Administrators*, 18 How. 503, and *Donohue* v. *Roberts*, 1 FED. REP. 449. I know of no authority, however, which will authorize this court to revise or disturb the decree of a probate court, obtained without fraudulent conduct on the part of the executor, in a case of which it had jurisdiction. Had the bill charged that the proceedings in the probate court were still pending, or that the decree settling the estate had been fraudulently obtained, the case would have presented a different question. But, even if this decree were impeachable, we do not see that the executors have been guilty of any dereliction of duty of which the plaintiffs are entitled to complain. They have paid all the debts and specific legacies, and procured the entry of an order setting off the residue of the estate to the distributees under the will. This seems to be the exact course authorized by the statute. Section 4407 of the Compiled Laws provides that the executor or administrator shall be entitled to the possession of the personal estate of the deceased, until assignment or distribution of the same to the heirs, legatees, or other persons entitled thereto, by the order of the probate court, or until the estate is finally settled.

In *Brown* v. *Forsche*, 43 Mich. 497, it is said that this section does not render it imperative that the personal representative should take possession of the estate; it only empowers him to do so. Section 4496 authorizes the probate court, after the payment of the debts, funeral charges, and expenses of administration, and after the allowance made for the expenses of maintenance of the family of the deceased, etc., to assign the residue of the estate to such other persons as are by law entitled to the same. Section 4497: "In such decree the court shall name the persons, and the proportions to which each shall be entitled, and such persons shall have the right to demand and recover their respective shares from the executor or administrator, *or any person having the same.*" It appears that the decree of the probate court, in the case under consideration, was entered in conformity with these provisions, and the right of the complainants to proceed against any person having in his possession the estate, or any portion thereof, belonging to decedent, to obtain their distributive share of the same, appears to be clearly allowed under this section.

It appears to me, however, that in filing his bill against the administrator, to obtain an accounting, they have mistaken their remedy. For both these reasons the bill must be dismissed, with costs.